## TRIUMPH EXPLOSIVES, Inc., et al. v. KILGORE MFG. CO. et al.

### No. 4814.

Circuit Court of Appeals, Fourth Circuit.

May 19, 1942.

Before PARKER, SOPER and DOBIE, Circuit Judges.

H. A. Toulmin, Jr., of Dayton, Ohio (Joseph Brennan, 2d, of Baltimore, Md., H. A. Toulmin and Rowan A. Greer, both

of Dayton, Ohio, Brown & Brune, of Baltimore, Md., and Toulmin & Toulmin, of Dayton, Ohio, on the brief), for appellees and cross-appellants.

Harold F. Watson, of Washington, D. C. (Watson, Cole, Grindle & Watson, of Washington, D. C., on the brief), for appellants and cross-appellees.

SOPER, Circuit Judge.

This suit for infringement of patents issued to Driggs and Faber relates to claims 1 and 2 of patent No. 1,712,382, and claims 2 and 7 of patent 1,712,383, which patents were issued May 7, 1929, on applications filed March 20, 1928, and to claims 1 to 4, 9 to 12 and 18 to 23 of patent No. 1,947,834 issued February 20, 1934 on an application filed September 19, 1931. These patents are called herein the first, second and third patent respectively. The first patent was for a firearm, the second for fixed ammunition for firearms, and the third for a flare signal. Infringement was charged against Triumph Explosives, Inc., a manufacturer of explosives, herein called the defendant, and against Glenn L. Martin Company, a purchaser of its goods. The District Judge held the first and second patents valid and infringed, and the third patent valid but not infringed. Cross-appeals were taken. D.C., 37 F.Supp. 766.

The general purpose of the patents is indicated by the introductory paragraphs of the specification of the first patent, which are as follows: "This invention relates to an improved hand operated muzzle loading firearm adapted for use in firing comparatively heavy projectiles at a low initial velocity, and with a minimum of recoil, and it is especially adapted for use in firing pyrotechnic signals from aircraft or from water borne vessels. It may also be used to discharge flares for illumination purposes, smoke signals, or the like, or it may be useful in distributing gases by police, or military or naval troops, and in a great variety of other ways, * * *."

The evidence indicates that after the first World War, need was felt for an improved device to furnish signal lights and flares to be used by aviators in place of the Very pistol which was a breech-loading mechanism requiring the use of two hands. Various ideas were suggested but no substantial improvement was made until the applications for the first two patents in suit were filed. The Ordnance Division of the United States Army had been searching for a more satisfactory manner of signalling, consisting of a pistol that could be operated with one hand, fired in any direction, up, down or sideways, by the use of ammunition which, in case of misfiring, could be released from the pistol without bringing it back into the plane and thereby increasing the fire hazard. The patented devices met these requirements and were adopted by the Army as standard equipment. Faber had been connected with the Pyrotechnic Schools of the Ordnance Department, and may have had something to do with the formulation of the Army's requirements, but there is no doubt that the new apparatus was a substantial improvement, or that it achieved commercial success. The sales between 1928 and 1940 were something in excess of one million dollars.

The patents disclose a heavy metal pistol with a very short, large calibre, smooth bore barrel into which is loaded from the muzzle a longer aluminum cylinder which serves as a cartridge case and auxiliary barrel. The cartridge case is held automatically in the barrel by a spring latch which fits into an annular groove at the base of the cylinder and can be released when desired by pressure of the thumb. The cartridge case is closed at both ends but contains at the base a blank cartridge that is exploded when the trigger of the pistol is pulled. The cartridge case also contains an aluminum cylinder or projectile case which encloses a candle or flare attached to a folded parachute. The explosion of the blank cartridge forces the projectile case from the cartridge case, which remains in the barrel of the pistol. The explosion also fires a delayed action fuse in the base of the projectile case so that after it has been shot out, a powder charge within is ignited, forcing the flare, that has also been ignited, and the parachute into the air. The cartridge case with its contents is called fixed ammunition. In practical operation cartridge cases are placed in a rack in the cockpit of the plane; the pistol, conveniently placed near at hand, is grasped by the aviator and the barrel is pressed down over the base of a cartridge case until it is automatically held by the spring latch. The pistol is then fired outside the plane and while it is held outside, the cartridge case is dropped by releasing the latch.

Claim 1 of the first patent is as follows: "A muzzle loading low pressure fire arm, adapted to be used with fixed ammunition provided with a cartridge case, comprising a pistol grip, a short smooth bore barrel, spring actuated firing mechanism with a trigger for releasing same, and automatic means for holding the cartridge case in said barrel before and after firing, with means for releasing same from said barrel when desired."

. On September 23, 1931, a disclaimer was filed restricting Claim 1 as follows: "By restricting the element 'cartridge casing' of said Claim 1 to 'closed at its rear end and capable of standing the strains of firing and ejecting completely a projectile therefrom without deformation of the cartridge casing'."

Claim 2 of the first patent is as follows: "A muzzle loading low pressure fire arm, adapted to be used with fixed ammunition provided with a cartridge case, having an annular groove near its base comprising a hand grip, a short smooth bore barrel of large calibre, spring actuated firing mechanism with a trigger for releasing same, and means for retaining the cartridge case in said barrel before and after firing, or for releasing same from said barrel when desired, and means comprising a spring latch adapted to engage in said annular groove, and to be released by hand."

▇ The validity of Claim 1 of this patent is first attacked on account of the character of the disclaimer. It is said that the disclaimer serves to add an element to the original claim and therefore amounts to a surrender of the claim. It was held in Altoona Publix Theatres v. Tri-Ergon Corp., 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005, that a patentee is not permitted to add by disclaimer a new element to a combination claimed by his patent, thereby transforming it into a new patent for a new combination; and also that a disclaimer, although invalid, amounts to an abandonment of the claim which cannot thereafter be revived. The principle was applied in that case to a patent for a combination apparatus for securing uniformity of speed in machines for recording talking motion pictures; and a disclaimer was held invalid which attempted to add a flywheel to the combination.

▇ There is merit in this contention. The title of the first patent and the introductory paragraphs of the specification quoted above indicate that the invention relates, not to the fixed ammunition to be fired, but to the pistol to be used to fire it. Ammunition is the subject of the second patent. Thus, the patentees state in their specification of the first patent that the "cartridge case and its contents are illustrated, described and claimed in our separate copending application filed March 20, 1928, Serial Number 263,026, and entitled 'Improvements in Fixed Ammunition for Firearms', but for the purpose of illustrating the operation of the gun, this cartridge case and its contents will now be briefly described". So also we find that the original claim speaks of a firearm "adapted to be used with fixed ammunition provided with a cartridge case". The claim describes the pistol, its firing mechanism and automatic means for holding the cartridge case in the barrel before and after firing, but does not describe the fixed ammunition itself. The disclaimer for the first time speaks of the cartridge case as an element of the claim and seeks to restrict this element to a cartridge case closed at the rear and strong enough to stand the explosion without deformation. The evidence does not show why the disclaimer was filed or what excess of invention, claimed through "inadvertence, accident, or mistake", the patentee was attempting to correct under the permissive terms of R.S. § 4917, 35 U.S.C.A. § 65; but whatever the motive, the attempt to introduce this new element into a claim originally confined to the pistol cannot be sanctioned under the established rule. See Altoona Publix Theatres v. Tri-Ergon Corp. supra; Milcor Steel Co. v. George A. Fuller Co., 2 Cir., 122 F.2d 292.

▇ We think, moreover, that both claims of the first patent are invalid because the disclosures of the prior art were of such a character that it did. not require an exercise of inventive faculty to devise the pistol. The French patent No. 594,962 to Vaxelaire published September 24, 1925, and the French patents No. 496,832 and No. 509,591 to Rollet published on November 18, 1919 and November 13, 1920 respectively, furnished sufficient information to enable one skilled in the art to add the improvements of the patent to signalling pistols that had long been known and used.

The Vaxelaire patent relates to improvements in the manufacture of rocket pistols for firing signal cartridges, and dis-

closes an apparatus which enables the shooter to load the pistol and to extract the empty cartridge after it has been fired, with the use of only one hand. The patent does not show a completed structure but is confined so far as it is pertinent to the present discussion to this one improvement. This is accomplished by providing a cylindrical casing to contain the pyrotechnic signal and by attaching to the casing a hollow cylindrical tube of smaller diameter so grooved as to permit it to be held rigidly in the barrel of the pistol. Suitably disposed in the barrel are hooks or shoulders actuated by springs which are operated by buttons or levers placed on the exterior of the pistol. The hooks or shoulders cannot move automatically during the firing. They are actuated only when the shooter pushes a button or lever, thereby operating the springs and causing the liberation of the cartridges. This arrangement enables the operator to load and unload the pistol with one hand, and also suggests a cartridge case which extends beyond the barrel of the pistol but remains therein during the firing whereupon the signal is expelled from the casing.

Rollet's earlier patent, No. 496,382, relates to a signal cartridge for use in signalling pistols in aviation service. The flare or signal is lodged in a metal case which is introduced into the bore of the pistol and remains there during the firing. The case is closed in the rear so that the gases resulting from the ignition do not come in contact with the barrel of the pistol. The cartridge is frictionally held in the barrel. It consists of a cylindrical tube of approximately the same diameter as the calibre of the barrel and is equal in length to the barrel. The tube is prolonged so as to form a cylinder of greater diameter that remains outside the barrel and contains the fireworks to be ignited. Before firing, the lid of the larger cylindrical portion of the casing is taken off. Ignition is conveyed through a wick in the smaller tube from powder contained at the lower end that is enclosed. The smaller cylindrical portion fits frictionally into the barrel and no means are shown for automatic firing, holding or release. Both hands are required to operate the apparatus.

The fireworks are not carried in a separate projectile casing but in the larger portion of the cartridge casing outside the barrel of the pistol and they leave the cartridge casing and are launched to the exterior by the force of the deflagration gases from the powder charge actuated by the primer which is subject to the firing pin of the pistol.

In the later Rollet patent, No. 509,591, a muzzle loading pistol with a very short barrel of large calibre is shown and also a cartridge designed to be locked in the barrel by a bayonet joint. An enlarged outer end of the cartridge projects beyond the barrel. The thickness of the metal in the cartridge is great enough so that it will not be warped through use but may be used again and again, meanwhile serving as a reenforcement for the barrel. The device is said to be capable of firing the signal as far as possible without deterioration of the sleeve. The lighting of the device is caused by percussion. Two hands are required for its operation. It will be noticed that the cartridge case is closed at the rear end and that it is of sufficient strength to resist the explosion.

None of these French patents purports to show a complete structure consisting of a fire arm and fixed ammunition. They merely offer improvements to signalling pistols and signalling means that are assumed to be well known. But complete anticipation of the patent in suit is not essential to a determination of invalidity. It is very clear that the Vaxelaire patent showed an improvement to a signalling pistol, permitting it to be loaded, fired and unloaded by the use of one hand, and that taken together, the three French patents suggested a pistol adapted to be used with a cartridge casing closed at its base and having an annular groove near its base and strong enough to act as an auxiliary barrel to the pistol. It did not require invention in our opinion to introduce these improvements in the signalling pistols that were well known when the application for the first patent in suit was filed, or to devise the combination of that patent; and this plain absence of invention is not overcome by evidence of the commercial success of the Driggs and Faber pistol even though it satisfied a long felt want. Altoona Publix Theatres v. Tri-Ergon Corp., 294 U.S. 477, 487, 55 S.Ct. 455, 79 L.Ed. 1005. It may be added that the commercial success achieved was due to the practical advantage that flowed from the use of the fixed ammunition of the second patent in the pistol of the first patent and not from the pistol alone.

448

■ · The second patent in suit specifically describes and claims the fixed ammunition to be used in the pistol. It consists of a cartridge case of sufficient size to contain the projectile and of sufficient strength to serve as an auxiliary barrel when used with a short barrel pistol, such as is shown and claimed in the co-pending application for the first patent. As more particularly shown by the specification, the device consists of a cylindrical cartridge casing with a stem of smaller diameter adapted to slide freely in the short barrel of the pistol and carrying an annular groove which engages the spring latch in the pistol. A blank cartridge, which fits in the base of the cartridge case, contains a small amount of explosive to expel the projectile therefrom. In the base of the cartridge case is an expansion chamber which affords sufficient room for the escape of the gases from the explosive. The forward portion of the cartridge case comprises the loading chamber into which the projectile is slidably mounted. The projectile consists of a cylindrical casing with side walls which may be of aluminum, bakelite, cardboard or other suitable material. It contains a pad of felt next to the base plug which forms the head of the cylindrical casing. This head has a flange to engage the end of the cylindrical casing and contains a sufficient expelling charge which is ignited by a fuse two or three seconds after the piece has been fired and the projectile has been ejected from the cartridge case. In front of the plug, another cylinder containing the flare composition is mounted. An ignition charge is situated adjacent to the chamber containing the expelling charge and is ignited by the latter and in turn ignites the flare. Forward of the flare is the parachute connected by the flare suspension wire to the end cap of the flare. The outer end of the cartridge case is closed by a cupped head.

Claims 2 and 7 of the second patent are as follows:

"2. Fixed ammunition for use with low power smooth bore firearms, having a short barrel of large calibre, said ammunition comprising a cartridge case forming an auxiliary barrel for the small arm and provided with a rearwardly projecting portion adapted to slide freely in the gun barrel with a propelling charge in the rear end of said cartridge case, and having a chamber for the expansion of the gases from the propelling charge, and said cartridge case having a loading chamber in front of said expansion chamber with a projectile mounted in said loading chamber, and adapted to be ejected therefrom by the gases from the propelling charge, said projectile comprising a tube closed at its rear slidably mounted in said loading chamber, signalling devices mounted in said tube and an expelling charge mounted in the base of said tube with means controlled by the firing of the small arm for igniting said expelling charge."

"7. Fixed ammunition for use with low power smooth bore firearms, having a short barrel of large calibre, said ammunition comprising a cartridge case forming an auxiliary barrel for the small arm and provided with a rearwardly projecting portion adapted to slide freely in the gun barrel with a propelling charge in the rear end of the cartridge case, and having a chamber for the expansion of the gases from the propelling charge, and said cartridge case having a loading chamber in front of said expansion chamber, with a projectile mounted in said loading chamber, and adapted to be ejected therefrom by the gases from the propelling charge, said projectile comprising a tube slidably mounted in the loading chamber of the cartridge case, a parachute and flare mounted in said tube, an expelling charge also mounted in said tube for ejecting said parachute and flare and for igniting said flare, and means, controlled by the firing of the small arm, for igniting said expelling charge."

When we first considered this patent, we reached the conclusion that it disclosed a combination of inventive quality not shown in the Rollet patents or other prior art. We pointed out in an opinion, for which the present opinion has been substituted, that the combination of the patent comprised a projectile casing containing the signal mounted in a cartridge casing that formed an auxiliary barrel for the pistol, an expelling charge in the projectile casing, means to ignite this charge after the projectile had been expelled from the cartridge, and means to ignite the flare material in the projectile from the firing means of the pistol after the projectile had left the cartridge casing; and we concluded that the novelty of this arrangement did not consist merely in the contents of the projectile, or in the combination of the cartridge casing and the projectile.

But, upon further examination of the prior art, assisted by briefs and arguments

of counsel upon rehearing, we are convinced that this conclusion was erroneous in that it failed to give sufficient weight to the British patent to Wilder No. 128,975 of July 10, 1919, which was referred to in somewhat general terms but not specifically described in the original briefs or arguments. This patent disclosed a projectile enclosing a pyrotechnic signalling device of the kind adapted to be discharged into the air from a gun and to be suspended by a parachute. A more particular description of this projectile is not needed at this point for it has already been set out in the description of the projectile contained in our summary of the specifications and in claims 2 and 7 of the second patent above set out. In short, it now appears that what we formerly attributed to the patentee as a new and substantial contribution to the art was in fact to be found in the Wilder patent. The projectile element of the second patent in suit is in fact the projectile of Wilder.

The question, therefore, is whether invention can be found in the combination of this device with the cartridge casing of the second patent to form the fixed ammunition therein described. We think not; for, as we have pointed out above, the Vaxelaire patent disclosed the method by which a cylindrical casing could be loaded in the barrel of a pistol and unloaded at will with one hand; and the Vaxclaire patent and more clearly the Rollet patents also disclosed a cylindrical cartridge casing closed at its base, of sufficient strength to serve as an auxiliary barrel of the pistol, consisting of a stem of smaller diameter to be inserted within the barrel of the pistol and a portion of larger diameter projecting beyond the barrel of sufficient size to contain the projectile. To put these suggestions together, and combine them with the Wilder projectile, as is done in the second patent, was undoubtedly an improvement in the art that makes for safety and efficiency in the use of pyrotechnic signals and is of value in the present war emergency; but in our view it does not rise to the dignity of invention.

We do not find, as contended at the bar, that the second patent may be distinguished from the Rollet patents because in it one explosion occurs within the barrel of the pistol and another explosion occurs beyond the barrel within the extended portion of the cartridge casing that is made strong enough to stand the strain, while in the Rollet structure there is no explosion in that part of the cartridge which is beyond the barrel of the pistol. It plainly appears from an examination of the drawings and specifications of the second patent in suit that while the first explosion takes place within the cartridge casing inside the bore of the pistol, the second explosion does not take place until the projectile casing has left the cartridge casing, and only then takes place the second explosion which ejects the contents of the projectile casing into the air. Moreover, it is not without significance that neither the Rollet patents nor the Wilder patent were cited in the examination of the second patent in the Patent Office.

The third patent in suit, which is fully described in the opinion of the District Court, covers an improvement in the projectile case covered by the second patent. The improvement, as set out in the claims of the third patent, consists in the construction of the projectile case of one piece of aluminum with a relatively heavy base and thin side walls. The validity of the patent is not free from doubt, but the question need not be decided here; for even if the patent is valid, it is only entitled, as the District Judge, held, to a narrow range of equivalents, and it was not infringed by the defendant because its structure, notwithstanding a general similarity to the structure of the patent, was not made of a single piece of metal.

The decree of the District Court will be affirmed in part and reversed in part, and the case will be remanded for further proceedings in accordance with this opinion.