**Robert N. PAGE and Boeing Airplane Company, Plaintiffs,**

v.

**Robert C. WATSON, Commissioner of Patents, Defendant.**

Civ. A. No. 4732–53.

United States District Court
District of Columbia.

May 15, 1956.

Robert W. Beach, Seattle, Wash., George R. Jones, of Beale & Jones, Washington, D. C., for plaintiffs.

S. W. Cochran, Washington, D. C., for defendant.

McLAUGHLIN, District Judge.

This is an action brought by plaintiffs under Section 145, Title 35 U.S.C.A., seeking judgment that plaintiffs are entitled to receive Letters Patent on four claims of application Serial Number 755,-493 filed June 18, 1947 for an article designated as a metal applique (and known by the trade name "Metal-Cal"), being a marking device made of aluminum foil, .003 of an inch thick, capable of being colored in various ways and having an adhesive back, said back being protected by a sheet of cellophane until ready for use when said cellophane is removed by soaking in water, the adhesive then becoming active by pressure. The article is resistant to abrasion, weather, oil and salt water and may be applied to a variety of surfaces, flat or curved. It was developed by plaintiff Boeing Airplane Company for marking particularly the exterior surface of airplanes in various ways, as well as for marking interior surfaces of airplanes and is extensively used for those purposes. It is also widely used for markings on golf club shafts; on fishing rods; on wooden handles of shovels and hammers, and on forks, hoes, rakes and other garden tools, and on a variety of other manufactured articles.

The four claims in the aforementioned application above referred to, involved in the action are Claims Number 24, 25, 26 and 32. Said claims are as follows:

"24. A labeled article bearing a metal applique comprising a piece of aluminum base foil having an aluminum oxide layer on each side thereof and of a thickness, including said aluminum oxide layers, of about .003 inch, bonded to said article sufficiently strongly with respect to the fragility of said foil to prevent said applique being peeled off the article without tearing of the applique, dye impregnating the oxide layer on one side of said foil piece over a portion of the area of such side, and the remainder of such side being of color contrasting with said dye.

"25. A metal applique comprising a piece of aluminum base foil having an aluminum oxide anodized layer on each side thereof and of a thickness, including said aluminum oxide layers, of about .003 inch, dye impregnating the oxide layer on one side of said foil piece over a portion of the area of such side, and the remainder of such side being of color contrasting with said dye, defining thereon substantially indestructable indicia.

"26. The metal applique defined in claim 25, in which the remainder of such side has an undyed mat finish."

"32. The method of making a metal applique which comprises the step of subjecting a piece of aluminum base material to the action of ammonium bifluoride solution and thereby producing a mat finish on such piece."

The first three of the above four claims to wit, Claims 24, 25 and 26, are claims pertaining to an article, a label or an applique. The fourth claim, to wit, Claim 32 pertains to a method of forming a mat surface on aluminum.

Claims 24, 25, 26 and 32 were rejected by the Patent Office, final rejection citing as references to support said rejections the following: Suter, 2,076,212, April 6, 1937; Yasoshima, 2,150,409, March 14, 1939; Mason (2), 2,507,314, May 9, 1950.

In the Examiner's Statement on appeal before the Patent Office Board of Appeals declaring said final rejection sound and proper it is announced:

Suter discloses a printed metal foil used on a label. The foil may be aluminum (page 1, column 2, lines 16 and 17).

Yasoshima discloses forming an oxide coating on one surface of a sheet of aluminum and then forming a design thereon by applying a dye in certain desired areas.

Mason (2) discloses the treatment of sheets of aluminum with ammonium fluorides broadly to produce a mat finish thereon.

Claims 24 to 26 are considered as involving no invention over Yasoshima in view of Suter or vice versa, and Claim 32 was rejected as fully met by Mason (2). Since the references Gmach, Mason and Stevens used in finally rejecting Claims 24 to 26 are considered merely cumulative to Yasoshima and Suter, they are not relied upon in the Examiner's statement.

Immediately following the foregoing announcement the claims are considered individually and the foregoing rejections upheld.

As to Claim 24 the Examiner states that said claim recites an article labelled with an aluminum foil label which has an oxide coating on one side and which is colored with a contrasting dye; that Suter discloses an article labelled with a colored aluminum foil; that, accordingly, it is considered that any article labelled with an oxidized aluminum foil would amount to merely an obvious substitution of materials especially since oxidized aluminum surfaces may be colored in desired areas as shown in Yasoshima. Examiner states further that Yasoshima's article is undoubtedly in sheet form since he (Yasoshima) mentions production of sound records which are thin discs. The Examiner goes on to state that as far as the labelled article is concerned, it is thought to be patently immaterial what thickness the label happens to be; that the .003 inch recited is

the thickness of the conventional aluminum foil. Examiner concludes (his statement of) consideration of Claim 24 with the statement that the commercial success asserted by applicant is not in and of itself a measure of patentability.

In reference to Claim 25 the Examiner states that said claim is directed to a metal applique; that all the structure recited is present in Yasoshima except the specific thickness specified; that any difference in the thickness of aluminum recited over and above that of Yasoshima is considered a difference in degree and not kind; that the manufacturing difficulties argued by applicant are considered immaterial as far as the claim per se is concerned.

The Examiner states that Claim 26 is dependent on Claim 25 reciting that the undyed areas have a mat finish. He states that Suter teaches the idea of providing a mat finish on the unprinted areas of aluminum labels or appliques and that accordingly it is thought that Claim 26 merely recites the obvious combined features of Yasoshima and Suter.

Considering Claim 32 the Examiner states that said claim broadly recites the production of a mat finish on a piece of aluminum by treating it with an ammonium bifluoride solution; that Mason (2) clearly teaches that the ammonium fluorides produce a mat finish on aluminum; that since there are only two fluorides Mason (2) undoubtedly intended to include ammonium bifluoride as well as ammonium fluoride. The Examiner states that, accordingly, it would not require invention to try ammonium bifluoride on the surface of aluminum and find that it produces a more desirable mat finish for applicant's purpose.

Commenting on applicants argument that ammonium fluoride produces no mat finish, the Examiner states that said arguments are not convincing since Mason (2) was concerned directly with the production of a mat finish and therefore must have used ammonium bifluoride to obtain the mat finish disclosed or else ammonium does produce a mat finish to some extent. The Examiner concludes

that the use of ammonium bifluoride therefore is not critical but merely constitutes an obvious substitution.

The Board of Appeals in its decision sustained the rejection of Claims 24, 25, 26 and 32 and petition for reconsideration was denied so far as concerns the making of any change in the Board's decision.

Both plaintiffs and defendant in their respective briefs have set forth their conclusion or view as to the issue in this action, upon which the Court's determination should turn.

Plaintiffs state the issue to be as follows:

"The question in the case is, therefore, simply whether this application of an anodized and dyed coating, whose general properties are well known, to metal foil for the purpose of providing a new and highly effective marking device, is invention."

Defendant states the issue to be:

"whether the record shows the Board of Appeals clearly in error in holding that, in view of available knowledge, it would not be beyond the skill of the art to conceive of anodizing and dyeing aluminum foil to make a marking device."

Defendant states in his brief that the above delineation of the issue is a proper phrasing of plaintiffs' statement of the issue and that the reference to "highly effective marking device" in plaintiffs' statement is not justified by the record.

The Court, after a consideration of the wording of the above quoted carefully drawn statements of the issue suggested and submitted respectively by plaintiffs and defendant concludes that it can do no better, in the circumstances, than to adopt and apply the issue in a very recent case decided by the Circuit Court of Appeals for the District of Columbia involving, as the instant case involves, the question as to whether the claims in question were "obvious" in view of the references relied on.

The case referred to is L-O-F Glass Fibers Company v. Watson reported in 97 U.S.App.D.C. 69, 228 F.2d 40 at page 41, and the issue herein adopted from that opinion is:

"* * * 'whether the structure set forth in claims 1, 2, 9, 23 and 24 [claims 24, 25 and 26 herein] of the appellants' application differs from the structure shown in the Barnard and Staelin patents [Yasoshima and Suter patents herein] in such a way that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.' "

Similarly, as to Claim 32, paraphrasing the foregoing, the Court adopts the issue as applicable as follows:

Whether the method set forth in Claim 32 of appellant's application differs from the method shown in the Mason patent in such a way that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.

The answer to the question which constitutes the above issue involves and depends on the answer to the questions: (1) "Is the subject matter of labels of the type and character of labels involved in the Suter and Yasoshima patents relied on as references, analogous to Claims 24, 25 and 26 involving the metal applique and the labelled article bearing a metal applique in controversy and would Yasoshima have suggested as obvious the dyeing and anodizing of the foil described in Suter, to make a label," and (2) "Is the process of making a metal applique, comprising the step of subjecting a piece of aluminum to the action of ammonium bifluoride solution and thereby producing a mat finish on such piece as disclosed in Claim 32, so obvious, in view of the disclosure of the Mason patent involving the treatment of aluminum with an alkali metal fluoride (intended by patentee of Mason to include fluorides of ammonium), as to cause Claim No. 32 to lack invention because of anticipation by Mason?"

The answer to the above two outlined questions, in the Court's opinion, is found in the physical inspection and comparison of products and processes involved in the references relied on by defendant and in the claims herein as well as in the testimony of witnesses Pike and Robertson produced by plaintiffs. Both witnesses, in the Court's opinion are shown by the testimony as to their background, experience in the label industry, long association and familiarity with labels of all types, including aluminum foil labels, to qualify as "skilled in mechanical arts and working in the field" of aluminum foil labels.

[2, 3] An inspection of the products resulting from the teachings of the Suter and Yasoshima products leads the Court to the conclusion that they are clearly unlike and lack any reasonable similarity to the product resulting from the teachings of Claims 24, 25 and 26. The anodized and dyed aluminum foil product of Page, the Court concludes from the record including the testimony of witnesses Robertson and Pike, is not one which would be obvious to a person skilled in the art of foil labels on the basis of the teachings of Suter and Yasoshima. The evidence of the superior quality of the Page anodized dyed aluminum foil product, its wide acceptance for use as a label, its superior features of durability and resistance to erosion, its clearly recognizable unique character as a product as compared with previous aluminum foil products on the basis of the teachings of Suter and Yasoshima serve to persuade the Court that the product under Claims 24, 25 and 26 are distinctive and are not obvious as a result of the teachings in Suter and Yasoshima.

The fact that metal foil beverage labels, decalcomanias and thicker metal name plates, much less suitable or usable for the purposes for which the Page product is employed, were in use, unsatisfactorily, for many years prior to the product which results from the teachings of Claims 24, 25 and 26, during which period the latter product would have been welcomed and extensively accepted to fill a need, constitutes an additional ground,—and to the Court a persuasive ground,—for concluding that the Suter product is not analogous to plaintiffs' and that plaintiffs' product as set forth in Claims 24, 25 and 26, differs from the structure shown in the Suter and Yasoshima patents in such a way that the subject matter as a whole would not have been obvious at the time the invention was made to a person having ordinary skill in the art.

The same observations as are above set forth concerning defendant's contention that Suter and Yasoshima constitute anticipations of Plaintiffs' Claims 24, 25 and 26, so as to destroy the latter's novelty and patentability, apply with equal force, in the Court's opinion, as to defendant's claim that Mason is anticipatory of Claim 32. The Court, in the face of the record, is persuaded that the Board of Appeals was not justified in holding that the use of normal fluoride taught in Mason would so incite one to try bifluoride that the trial of bifluoride would be no invention and that on making such trial one would be only following the teaching of the art. It is true that Dr. Rice, in his testimony detailing the results of his experiments concerning the formation of a mat finish on aluminum stated that "it certainly wouldn't require any uncommon talent to try other fluorides" than ammonium fluoride, but it is to be noted that he stated as part of his answer that "I might say he would then be investigating things, he would not be following the teaching. He would be a research man."

In the circumstances, it is the view of the Court that the structure set forth in applicants' Claims 24, 25 and 26 differs from the structure shown in the Suter and Yasoshima patents in such a way that the subject matter as a whole would not have been obvious, at the time the invention was made, to a person having ordinary skill in the art, and on the same basis it is the Court's view that the method taught in the Mason patent is not anticipatory of Claim No. 32 in plaintiffs' application.

The Court concludes, premises considered, that plaintiffs are entitled to receive Letters Patent on Claims 24, 25 and 26 and 32 of application Serial Number 755,493 filed June 18, 1947.

Counsel will prepare appropriate findings of fact, conclusions of law and order.