The BOEING COMPANY, a Delaware corporation, and C & H Supply Company, a Washington corporation, Plaintiffs,

v.

NELSON NAME PLATE COMPANY, a California corporation, Defendant.

No. 62–704.

United States District Court
S. D. California,
Central Division.

Jan. 5, 1965.

Older, Hahn, Cazier & Hoegh, by Richard B. Hoegh, Los Angeles, Cal., for plaintiffs.

Huebner & Worrel, Herbert A. Huebner, Harlan P. Huebner, Los Angeles, Cal., for defendant.

CRARY, District Judge.

The within action is for alleged infringement of Claims 2, 3 and 8 of United States Patent No. 2,769,265 issued to Boeing Airplane Company on November 6, 1956. By Supplemental Complaint Avery Products Corporation was added as a party plaintiff. Plaintiff Boeing granted C & H Supply Company a license to manufacture, use and sell the patented devices and to use the processes claimed in the patent.

Claims corresponding to 2, 3 and 8 in Pat. 265 were numbered 25, 26 and 32, respectively, in the application as originally filed on June 18, 1947. The patent office, affirmed by the Board of Appeals, rejected Claims 24, 25, 26 and 32 of the original application. The District Court, District of Columbia, in Page et al. v. Watson, Commissioner of Patents, 144 F.Supp. 42, overruled the Patent Office and the Board of Appeals and determined the plaintiffs, Page et al., were entitled to receive letters patent on Claims 24, 25, 26 and 32 of said application filed June 18, 1947. The patent was issued November 6, 1956. Claim 8, in its present content, was granted on an amended application filed in June, 1951.

Defendant, Nelson Name Plate Company (hereafter referred to as Nelson), has been manufacturing and selling metal foil appliques since November 6, 1956, made from aluminum foil of varying thickness, including .003 inch, anodized and colored and provided with adhesive coating on the side opposite the indicia. Plaintiffs have known of the defendant's manufacturing and sale of said appliques since November 6, 1956, and have brought no infringement suits except the instant action filed May 21, 1962.

It is stipulated that the prior art set forth in defendant's Exhibit A, other than patents listed in the patent in suit, was not before the patent office when

the patent was issued or amended nor considered by the court in the case of Page v. Watson, supra.

Defendant contends, in chief, that Claims 2, 3 and 8 of the patent in suit are invalid as disclosing no invention in view of the prior art, that Claim 8 is invalid for the further reason of public use of the process for more than one year prior to the amended application therefor filed June, 1951, that said Claims have not been infringed, that the plaintiffs are guilty of equitable estoppel and misuse of the patent, and of unconscionable conduct in maintaining this action after being apprised of the pertinent prior art not considered by the Patent Office or the District Court in the Page case, supra, that the patent admits of a drawing and absence thereof renders it invalid and that the patented device has no commercial success.

The court incorporates herein the "Joint Pre-Trial Statement" and "Pre-Trial Conference Order" of the parties as filed in the case.

Mr. Page, the inventor, does not claim to have discovered the anodizing of aluminum foil. He was familiar with the anodizing of aluminum base materials and was able to satisfactorily anodize aluminum foil within a period of a few days as the result of testing in this field.

The evidence in the instant case indicates that the processes of anodizing and dyeing aluminum foil were known for a considerable period prior to November 1, 1946. The court finds this to be a fact from the testimony of Dr. Jeffreys and Mr. Jessup, who testified on behalf of defendant, and the patents and publications in defendant's Exhibit A, referred to above. The process of anodizing and dyeing aluminum, whether foil (less than .006 inch in thickness) or aluminum plate, appears to be the same. Not only did Dr. Jeffreys so testify, but that fact is demonstrated by defendant's Exhibit P herein which involved aluminum sheets from .003 inch to ³⁄₁₆ths inch in thickness.

The applying of a resist to a portion of the anodized and dyed material and then bleaching out the color not covered by the resist was learned by Mr. Page from ALCOA.

It appears to the court that the prior art (Ex. A), referred to above, which was not before the Patent Office or Court when the patent was issued, is substantially more revealing than the prior art cited in the patent.

The obtaining of a mat surface on the foil could be accomplished by the use of several different chemicals including ammonium fluoride (Mason Patent No. 2,507,314, File Wrapper reference), and mechanical means, all known for a matter of years prior to November 1, 1946. The Edwards article (1939) (Ex. A) mentions etching (mat finish) by sandblasting. Mr. Page's use of ammonium bifluoride, as called for in Claim 8, was known by him at the time to etch glass and presumably metal. He also knew that frosting, etching or mat finish could be obtained from chemicals such as hydrofluoric acid, hydrochloric acid and fluorides used in alkaline baths and ammonium fluoride as taught by the Mason Pat. 314. It is to be noted that the Brown Patent (1939), No. 2,316,220 (Ex. A), not listed in file wrapper, (column 2, lines 2 to 20, page 1), teaches the use of ammonium bifluoride as being "especially effective" with alkali metal phosphates for use in removing discoloration from and cleaning aluminum. The Brown Patent (column 1, line 5, page 2) also states that discoloration and stains may be removed in most cases by five minute treatment which leaves a "slightly frosted appearance." This indicates that ammonium bifluoride would produce a mat surface. Dr. Jeffreys testified that the process of Claim 8 was a matter of selectivity, not invention. In view of the general knowledge and disclosure in the Brown Patent, supra, it appears, as testified by Dr. Jeffreys, that from the general knowledge in the industry and information disclosed by the prior art that as of November 1, 1946, there was no problem

beyond the skill of one in the art to produce the anodizing and dyeing of aluminum foil with a mat finish produced by an ammonium bifluoride solution and that only mechanical skill was requisite to produce name plates from the foil so processed. *The court concludes that* the work of Mr. Page on the metal applique name plates (Boeing trademark name "Metal-Cal") was prompted by the great demand which grew in the late years of World War II and thereafter for name plates to be applied to airplane parts which would withstand the rigors of the greatly increased speed of modern aircraft and the extreme high and low temperatures to which name plates would then be subjected.

The need for proper adhesive was one of the major problems in the successful solution to the making of such name plates. This problem was solved about 1946 by the development of a new type adhesive, now made by Minnesota Mining & Manufacturing Company and presently used by plaintiff C & H Supply Company, which greatly contributed to the success of the patented device in suit.

The questions before this court appear to be similar to those before the court in Page v. Watson, supra; that is, whether the structure set forth in Claims 2 and 3 of the patent differs from the structure shown in the *presently known* prior art in such a way that the subject matter as a whole would have been obvious at the time of invention to a person having ordinary skill in the art and whether the method in Claim 8 differs from the method shown in the prior art *now before the court* in such a way that the subject matter as a whole would have been obvious at the time the alleged invention was made to a person having ordinary skill in the art.

With reference to the questions posed above, the court concludes from the evidence adduced, including the added prior art set forth in Exhibit A and the testimony of defendant's experts, Dr. Jeffreys and Mr. Jessup, that the structure set forth in Claims 2 and 3 of the patent does not differ from the structure in the prior art, as discussed hereinabove, in such a way that the subject matter as a whole would not have been obvious at the time of invention to a person having ordinary skill in the art and that *this is true with respect to the method* noted in Claim 8. In this regard, the court finds that the subject matter of labels of the type involved in the prior art now before the court and relied on by defendant is analogous to Claims 2 and 3, involving the metal appliques in controversy, and that anyone familiar with the whole prior art before the court would be able as a matter of ordinary skill to make the patented appliques. The prior art, it is to be noted, includes the Mason Patent No. 2,115,339 (not a File Wrapper reference), the article of Junius D. Edwards (1939) on anodic coating of aluminum foil, the Edwards-Keller article re anodizing aluminum foil (1940), and the Taylor article re multi-color anodizing (1942), all a part of defendant's Exhibit A.

The court further finds that the process of making a metal applique, including the step of subjecting aluminum plate to the action of ammonium bifluoride solution and thereby producing an etched, frosted or mat finish thereon, as disclosed in Claim 8, would likewise be obvious in view of the disclosures in said prior art so as to cause Claim 8 to lack invention because of anticipation of said Claim by Brown in Pat. 220 and the general knowledge available at the time on the subject. Defendant's expert was not contradicted on this point.

The cases have clearly announced the rule that to be patentable an improvement to a device or process must result from invention and not the exercise of ordinary skill of one in the art or an advance plainly indicated by the prior art. Electric Cable Joint Co. v. Brooklyn Edison Co., Inc., 292 U.S. 69 at 79, 54 S.Ct. 586, 78 L.Ed. 1131.

Plaintiffs urge that the presumption of validity of a patent is strengthened by the commercial success thereof.

In Altoona Public Theatres v. American Tri-Ergon Corp., 294 U.S. 477 at 487–488, 55 S.Ct. 455 at 459, 79 L.Ed. 1005, the court states that the respondent argued that the commercial success of the device of the patent in suit " * * * must be accepted as convincing evidence of invention." In the case at bar, the court finds there was commercial success in the marketing and sale of the patented appliques but, as stated by the court in the Altoona Theatres case,

> " * * * want of invention would have to be far more doubtful than it is to be aided by evidence of commercial success, indicating that it brought realization of a long-felt want."

It appears to the court that in view of the prior art in the anodizing of aluminum foil and the use of ammonium fluorides and ammonium bifluoride in causing etching and frosting of aluminum surface that only the skill of the art was required to make the device covered by Claims 2 and 3 and adapt the process of Claim 8.

Based on the foregoing reasons and findings, the court concludes that the presumption of validity of the patent in suit and the effect of the commercial success of the patented device, which was established by the evidence, has been overcome by a preponderance of the evidence and that the said Claims 2, 3 and 8, and each of them, are invalid.

The merits of the defense of non-infringement are not as difficult to decide as that of validity, but by reason of the finding of invalidity as to the Claims involved, determination of infringement is not reached. For the same reason, it is unnecessary to decide the other defenses urged by defendant.

Defendant asks judgment for attorneys fees on the grounds plaintiffs are guilty of misuse of the patent and of unconscionable conduct in maintaining the action after being apprised of pertinent art not considered by the Patent Office or the District Court for the District of Columbia. The court finds that neither point is well taken and that defendant is not entitled to attorneys fees.

Counsel for defendant are requested to prepare, serve and lodge Findings of Fact, Conclusions of Law and Judgment in accordance with this memorandum and the provisions of Rule 7, Local Rules of this court.

This memorandum is not to be deemed a final judgment.